I respectfully dissent from the majority opinion sustaining the plea of prescription.
The sale was held on November 26, 1932, and Dr. DeGravelle purchased the property, but did not take the actual physical possession of the property; Wesley Sperling, on behalf of himself and naturally on behalf of his co-owners, remained in possession of the property. Prior to January 6, 1933, the property then remaining in the possession of the heirs of James Sperling, Wesley Sperling, in accordance with Egle's testimony, sought Egle to "take property over and pay the back taxes", and that he did so for the reason that "it was a good speculation". Later on, in his testimony, he states that he "had no desire really for property down there, and figured it was a bad bet". This statement does not fit with his former statement to the effect that it was a good speculation.
On the question of the sawmill, he states that he kept "it for a year, and then he purchased a mill and put the said mill there". As to the date he purchased the mill and reconstructed it on the property he does not state. However, it stands to reason that it was after January, 1934. That after the construction of the mill, the kind and capacity not being shown, Wesley Sperling worked from the beginning of operation and as long as the mill was in operation. These facts are indefinite. As to the construction of a ditch from the bayou to the mill in order to get "timber from the bayou to the mill", he is also indefinite as to the month this was done.
He further states that he used one of the rooms as a storage house for tools, repairing of the roof and house, and constructed an out-house on the premises. I gather from the evidence all of this was done after the construction of the mill. Again the evidence is indefinite.
On June 15, 1938, Egle had Chas. A. Bibbins, presumably the Justice of the Peace, write Wesley Sperling a letter demanding rent of five dollars per month, payable monthly, for the occupancy of the house. On being questioned as to why and the purport of this demand, if Wesley Sperling, having lived in the house and on the premises, had not possession of the premises, replied that he "just wanted to let him know that I still owned the property".
It is practically admitted that Wesley Sperling has been living on the premises, continuously, prior to and up to the time of the tax sale, and even up to the trial of the case.
The most favorable situation for Egle is to state that there was dual occupancy of the premises.
The plea of prescription is a special plea, and the burden of proof rests with the pleader. He must make his case to a certainty, to make it probable is not enough. In this case, I am of the opinion that Egle has not definitely and conclusively shown that he has had the actual and physical possession of the property for five years prior to March 23, 1939, and that therefore his plea of prescription should be overruled.
My conclusion therefore is that the judgment should be reversed and set aside and that there be judgment in favor of Wesley Sperling et als. and against Raymond Egle, decreeing the purported tax sale to be null and void and of no effect, and further judgment in their favor and against Raymond Egle, recognizing them entitled to the sum deposited, with costs. *Page 384